**Elbena T. BATISTA, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. CIV 87–209 PHX EHC.**

United States District Court,
D. Arizona.

March 7, 1988.

Joel F. Friedman, Jerome, Gibson & Stewart, P.C., Phoenix, Ariz., for plaintiff.

John R. Mayfield, Asst. U.S. Atty., Phoenix, Ariz., for defendant.

## ORDER

CARROLL, District Judge.

Plaintiff asks the Court to review the decision of the Social Security Administration (SSA) Appeals Council and Administrative Law Judge (ALJ) in denying her request for exemption from the government pensions offset provisions of Title 42 U.S.C. section 402(e)(7) and section 7(a) of Public Law 97–455.

Plaintiff reached the age of 60 on Jan. 3, 1983. She applied for social security widow insurance benefits (WIB) in April of 1983. Plaintiff is the surviving spouse of George Batista who died on August 15, 1968. Plaintiff also began receiving a pension from the State of Illinois in February of 1983.

Initially, plaintiff's claim for widow's benefits was approved, but two months later she was advised that she was not entitled to widow's benefits as her social security payment was being reduced by the amount of her pension from the State of Illinois retirement system. It was also determined that plaintiff was not eligible for the exemption from the offset.

In her motion plaintiff states that she has met the criteria for eligibility for widow's benefits under 42 U.S.C. § 402(e). Plaintiff notes that the Act was amended in 1977 to provide that widow's (or widower's) benefits would be reduced by any monthly periodic benefit (government pension) payable to the widow where the pension for such month was based on her earnings while in the service of federal, state or local government and such service was not covered for social security purposes. The amendment also permitted an exception to this offset for those who were eligible to receive government pensions prior to December 1982 (this period was later extended to July, 1983) and who would have qualified for unreduced spousal benefits under the Act as it was being administered in January 1977. In January 1983 the Act was amended to provide for a limited ex-

tension of the government pension offset exemption. However, this extension to the offset provision required that the individual be eligible for retirement benefits prior to July of 1983 and meet the requirements of the dependency test.

The background of the offset provision is discussed in *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). Prior to December 1977 the Act provided that benefits were payable only to those husbands or widowers who could demonstrate dependency on their wage earning wives. Wives and widows, however, were entitled to benefits without any such showing of dependency on their husbands. The Supreme Court in *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), held that the gender based dependency requirement for widowers violated the equal protection clause. The dependency requirement was then repealed. The elimination of this test, however, increased the number of individuals entitled to spousal benefits which could have created fiscal problems for the Social Security Administration. *Mathews,* 104 S.Ct. at 1391. "This problem was particularly acute with respect to the large number of retired federal and state employees who would now become eligible for spousal benefits. Unlike most applicants, who must offset any dual Social Security benefits against each other, 42 U.S.C. § 402(k)(3)(A), retired civil servants could, at the time of the 1977 Amendments, receive the full amount of both the spousal benefits and the government pensions to which they were entitled." *Mathews,* 104 S.Ct. at 1391. To avoid this problem, Congress included a pension offset as part of the 1977 amendments. The exemption applied to those spouses who were eligible to receive pension benefits prior to December 1982 and who would have qualified for unreduced spousal benefits under the Act as it was in effect in January 1977. Congress adopted the offset provision to protect the expectation of persons, men and women, who had planned their retirement based on the pre-January 1977 law under which they could receive spousal benefits unreduced by the amount of any government pension to which they were also entitled. *Mathews,* 104 S.Ct. at 1398.

In January 1983 the Act was again amended to provide a limited extension to the offset provision. *See* Pub. Law 97–455. This amendment provided an exemption for an individual to whom there is payable for any month prior to *July 1983* a monthly periodic benefit (government pension) and who at the time of initial entitlement to such benefit ... (B) meets the dependency test of one-half support as it read prior to the enactment of the amendments made by this section, or an equivalent dependency test (if the individual is a woman). Prior to the enactment of this section, there was no dependency test for women. Only men had to meet this requirement.

Plaintiff claims that she provided the ALJ with an "equivalent dependency test" for determination that she depended on her husband for half of her support during the year prior to his death. Plaintiff asserts that the statute provides she may show her dependency in two ways: 1) by showing she depended on her husband for one-half her support or 2) by an equivalent dependency test. According to plaintiff the ALJ totally ignored this language in the statute.

When plaintiff became eligible for retirement benefits in February 1983 she received approximately $705 per month from the State of Illinois. She also claims entitlement to approximately $400 per month as widow's benefits. Prior to taking retirement plaintiff was making approximately $1,700 per month. Her retirement from the state required her to take a drop in income of $1,000 per month. Plaintiff would be able to recoup some of this loss if the exemption for government pensions was applied to her.

In evaluating the evidence the ALJ noted that the offset would not apply to individuals who were receiving one half of their support from the deceased wage earner during the 12 month period prior to his death. One half support refers to situations where the insured person (George) provides one half of the support by making regular contributions to support and the amount of such contributions exceeds one

half of the claimant's (Elbena) ordinary living costs. 20 CFR 404.366(b). Ordinary living expenses are the costs for food, shelter, routine medical care and similar necessities.

In determining the amount of money contributed by plaintiff to support, the ALJ pooled the income from the family. TR. 22. The ALJ used the last 4½ months of 1967 and first 7½ months of 1968 to calculate the earnings. The ALJ figured combined earnings of $17,930.33 for the 12 month period preceding the husband's death. Dividing this figure by 4 household members (two children were at home during this time), each had $4,482.58 in expenses. Claimant had total earnings of $7,140.38 for the 12 month period in question. Given the amount of expenses for each member, plaintiff's income exceeded her expenses by approximately $2,600. The ALJ concluded that there was no basis from which to state that plaintiff's husband provided more than ½ of her support during the 12 months prior to his death.

The ALJ considered the documentation presented by plaintiff concerning her contributions to family support. The ALJ found these to be unsupported, incomplete and speculative. TR. 20. Plaintiff provided the ALJ with alternatives to determining the amount of money she actually contributed to her support. TR. 73–75, 80–82, 84–93. Plaintiff claimed that she incurred expenses that she would not have incurred but for her job and that these expenses should be subtracted from her income prior to pooling her income with that of her husband's. Plaintiff also wishes to deduct support for her children before determining the amount she could contribute to the support of herself. However, there was no similar calculation for that part of her husband's income which was used to support the children or incurred only because of his job.

The ALJ did not find these figures persuasive especially since plaintiff was unable to specify the amount of support received from her husband when asked to do so in April of 1983.

Because the husband did not provide at least ½ support to plaintiff, the ALJ held the exception to the government offset is inapplicable to this case.

On review the appeals council disagreed with plaintiff's interpretation of the phrase "equivalent dependency test." The Appeals Council stated that the amendment to the statute provided that the public pension offset would not apply to an individual who became eligible for a public pensions prior to July 1983 if that individual was dependent on his or her spouse for ½ support. The ½ support test was to be applied according to pre-1977 law except that it would apply to both men and women. The phrase "equivalent dependency test (if the individual is a woman)" was intended to mean only that both men and women must meet the same ½ support test. TR. 6.

In the legislative history discussing the amendment examples of the public pension offset are illustrated. *See* Exhibit 3 to plaintiff's reply memorandum. The examples illustrate a situation in which a woman becomes eligible for $300 public pension from uncovered employment sometime between December 1982 and July 1983. Her husband receives a social security benefit of $500 (potential spouse benefit of $250). At the time her husband retired, died or became disabled, he provided more than one-half of her support. The woman will receive a spouse benefit of $250 or a widow's benefit of $500—in the event of the husband's death—in addition to her public pension of $300. However, if the same situation is present except that at the time her husband retired, died or became disabled, he did not provide more than one-half of her support, she will receive no spouse benefit. The $250 is entirely offset by the $300 public pension. She could receive $200 in widow's benefits which would be the $500 widow's benefit minus the $300 public pension.

In the present case plaintiff receives $700 per month from the State of Illinois. She would be entitled to $400 in widow's benefits (this is the amount based on her husband's earnings) if her husband had provided for one-half of her support. Since

he did not, plaintiff must offset the widow's benefits against her public pension. In this case the widow's benefits are entirely offset.

In view of the fact that prior to the amendment, only men had to prove dependency on their spouse to receive benefits, it is understandable that women would now be required to meet the same test. In addition, the statute was ruled unconstitutional because it applied a different standard to men than it did to women. If plaintiff's interpretation is accepted, a different standard would still apply to men than to women, women being allowed to show some proof of "equivalent dependency" while men may not.

Plaintiff has apparently conceded that she was not literally receiving ½ of her support from her husband at the time of his death. However, plaintiff attempts to establish that even though she was providing over ½ of the annual income to the household at the time of her husband's death, she did not provide ½ of her own support.

A court cannot set aside a denial of benefits unless the "Secretary's findings are based upon legal error or are not supported by substantial evidence in the record as a whole." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir.1985). Where evidence in inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Plaintiff is receiving retirement benefits from the State of Illinois. The applicable statute in effect at the time required a dollar for dollar offset of this pension against any social security benefits that might be received by plaintiff unless plaintiff could establish she received at least ½ of her support from her husband prior to his death. Plaintiff has not done this.

ACCORDINGLY,

IT IS ORDERED granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment.

Judgment shall be entered in favor of defendant.