**Elbena T. BATISTA, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services \*, Defendant–Appellee.**

No. 88–2547.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1989.

Decided Aug. 24, 1989.

---

\* Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Joel F. Friedman, Jerome, Gibson & Stewart, P.C., Phoenix, Ariz., for plaintiff-appellant.

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before POOLE, REINHARDT and O'SCANNLAIN, Circuit Judges.

REINHARDT, Circuit Judge:

Elbena Batista appeals from the district court's grant of summary judgment in favor of the Secretary. The district court's decision affirmed the Secretary's denial of Mrs. Batista's request for an exemption from the government pension offset provision of the Social Security Act. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## FACTS

Elbena Batista was born January 3, 1923, and turned 60 years old in 1983. She married George F. Batista on June 3, 1944, and they remained married until his death on August 15, 1968.

On February 1, 1983, Mrs. Batista became eligible for pension benefits under the Illinois Employee's Retirement System. Her last day of employment with the Illinois State Toll Highway Authority was June 30, 1983, and she began receiving her state pension in July 1983. On April 19, 1983, she filed for Widow's Insurance Benefits. She received these benefits for two months, but was then advised that she had been overpaid $782.00 because her benefits should have been reduced by the amount of her pension from the State of Illinois Toll Highway Authority.

Mrs. Batista then applied for an exemption from the pension offset pursuant to 42 U.S.C. § 402(e)(7) and section 7(a) of Public Law No. 97–455. The Administrative Law Judge (ALJ) concluded that to qualify for this exemption, Mrs. Batista was required to show that she derived one-half of her support from her husband during the 12 month period prior to his death. To determine whether Mrs. Batista met the statutory requirement, the ALJ applied the Secretary's pooling method, which creates a rebuttable presumption that members of a household pool their income and are supported equally by the combined amount. *See Drombetta v. Secretary of Health & Human Services*, 845 F.2d 607, 609 (6th Cir.1987). During the relevant period, Mr. Batista's total earnings were $10,789.95, while Mrs. Batista's were $7,140.38. Under the pooling approach, the cost of Mrs. Batista's support was deemed to be one-half of the combined incomes, or less than $9000. Of this amount, Mrs. Batista is held to have provided the $7140.38 she earned and her husband is credited with applying the balance, or less than $2000. Thus, the ALJ held that Mrs. Batista did not meet the one-half support test.

Mrs. Batista appealed the ALJ's decision to the Appeals Council. The Appeals Council denied her request for review and concluded that language in section 7 of Public Law No. 97–455 requiring a one-half support test for men or "an equivalent test" for women did not allow women to qualify under a different test than men. Rather, it concluded that both men and women must meet the same one-half support test. Mrs. Batista then sought review of the Secretary's decision in the district court, which

granted summary judgment for the Secretary. 680 F.Supp. 324. This appeal followed.

## DISCUSSION

Prior to 1977, the Social Security Act required men seeking widower's benefits to prove that they had received at least one-half support from their spouses; however, women seeking benefits were not required to meet any dependency test. In March 1977, the Supreme Court held that this distinction violated the equal protection requirement of the Due Process Clause of the Fifth Amendment. *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977). In response to this decision, Congress eliminated the dependency test, but also provided that survivor's benefits for both men and women would be offset by the full amount of any pension the claimant received as a result of employment not covered by social security, from a federal, state, or local government agency (pension offset provision).[1] *See* Pub.L. No. 95–216, §§ 334(c)(1) & 334(d)(1), 91 Stat. 1545. However, Congress provided that the amendments would not apply to any individual who became eligible for support benefits during the 60 month period from January 1977 to December 1982 and who would have been entitled to benefits prior to their adoption. Pub.L. No. 95–216, § 334(g), 91 Stat. 1546. Accordingly, women who became eligible for support benefits during this period could receive survivor's benefits without making any showing of dependency and their benefits would not be subject to the pension offset provision. This 60 month "window" was provided to protect the reasonable expectations of many women who, in making their retirement plans, had relied on receiving the social security survivor's benefits regardless of their dependency status. The Supreme Court in *Heckler v. Mathews*, 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984), held that this "window" was permissible in that it was not gender-based, but

rather was "substantially related to the important governmental interest of protecting individuals who planned their retirements in reasonable reliance on the law in effect prior to" *Goldfarb. Id.* at 750–51, 104 S.Ct. at 1401.

In January 1983, Congress passed Pub.L. No. 97–455, which is the law at issue in this case. This law amended Pub.L. No. 95–216 by providing for a new six month period to take effect at the end of the 60–month window. During the new six month period, the pension offset exemption would be available to an individual who:

> meets the dependency test of *one-half support* set forth in paragraph (1)(D) of such subsection (f) as it read prior to the enactment of the amendment made by this section, or *an equivalent dependency test* (if the individual is a woman) in the case of an individual applying for or becoming entitled to benefits under such subsection (e), (f), or (g).

Pub.L. 97–455, § 7, 96 Stat. 2501 (emphasis added). The provision applied to any person who became eligible for survivor's benefits between January 1, 1983 and June 30, 1983. *Id.* Under the then current law, after June 30, 1983, all claimants of survivor's benefits who also received pensions from uncovered employment would be subject to the 100 percent pension offset provision.

Shortly after Pub.L. No. 97–455 was enacted, however, Congress again changed the pension offset provision. That change provided that for persons becoming eligible after June 30, 1983, only two-thirds of their pension from uncovered employment, rather than the entire amount, would be offset against any survivor's benefit that surviving spouse, male or female, would otherwise be entitled to. *See* Pub.L. No. 98–21, § 337, 97 Stat. 131 (enacted April 20, 1983); 42 U.S.C. §§ 402(e)(7) & 402(f)(2).

As discussed *supra*, the claimant became eligible for benefits in April 1983. Accordingly, she was unable to take advantage of

---

1. This pension offset provision was enacted to prevent the fiscal drain on the Social Security trust fund that would otherwise have occurred because of the increase in the number of individuals eligible for survivor's benefits had Congress simply repealed the dependency test. *Heckler v. Mathews*, 465 U.S. 728, 732, 104 S.Ct. 1387, 1391, 79 L.Ed.2d 646 (1984).

the 60–month window provided by Pub.L. No. 95–216, which expired December 31, 1982, during which no pension offset would occur and eligible women could receive survivor's benefits without regard to their dependency status. Because she became eligible for benefits three months prior to the effective date of Pub.L. No. 98–21, under which dependency would no longer be used as an eligibility criterion for an exemption from the pension offset provision,[2] she must meet the dependency requirements of Pub.L. No. 97–455. It is the underlined language of that law, *"an equivalent dependency test"*, that is at the center of the controversy in this case.

Mrs. Batista argues that the Secretary erred in requiring her to meet the one-half support test specified in 20 C.F.R. § 404.408a(c), rather than a separate "equivalent dependency test". She argues that because the statutory mandate is expressed in the disjunctive, the statute should be construed to allow her to qualify under either of two tests—the one-half support test, used until December 1, 1982, for men only, or an "equivalent dependency test". *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) (terms used in the disjunctive should "be given separate meanings, unless the context dictates otherwise"); *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir.1975). She contends that this interpretation is consistent with Congress's intent in using the "or equivalent dependency test" language. She asserts that Congress's intent in enacting Pub.L. No. 97–455 was the same as the intent it had when it previously enacted the 60 month grace period, namely to protect women who had relied on receiving the spousal benefit in planning their retirement. Accordingly, she contends that the Secretary's construction of the statute contravenes the congressional intent by requiring the same test for both men and women.

We disagree with the construction of the statute Mrs. Batista advances. In construing a statute, we look first to the language of the statute itself, and second to the statute's legislative history. *United States v. Dadanian*, 818 F.2d 1443, 1448 (9th Cir. 1987). Here, the statute does refer to both a "one-half dependency test" and "an equivalent dependency test". Nevertheless, we do not believe that this language provides for two separate dependency tests. While the definition of "equivalent" is something that has a "corresponding import, meaning or significance," *Black's Law Dictionary* 486 (5th ed. 1979), and thus suggests that ordinarily an "equivalent dependency test" might be different in some respects from a "one-half dependency test", that is not the case here. Section 7 of Pub.L. No. 97–455 refers specifically to the "one-half [dependency test] set forth in paragraph 1(C) of [Social Security Act section 418(c)] as it read prior to the enactment of the amendments made by [Pub.L. No. 97–455]." Section 218(c) addresses specifically and exclusively the requirements for entitlement to widower's benefits. The section is replete with references to widowers, and the one-half support test of that section, by its terms, applied only to men. While Congress could simply have provided in Section 7 of Pub.L. No. 97–455 for the incorporation of all or part of the provisions of section 218(c), we believe that it elected not to do so because of the possible ambiguities that might have been created, not to mention the semantic difficulties it faced in attempting to make applicable to women a section which applied by its terms only to men.

Certainly, Congress could have used a clearer expression, such as "the same test" rather than "an equivalent dependency test", to express its intent to have the one-half dependency test apply to both men and women. But the mere fact that Congress might have chosen its statutory language more carefully does not convince us

2. We note that if Mrs. Batista had become eligible for benefits during this period, she would not have received survivor's benefits. Her monthly pension from the Illinois Employee's Retirement System was $705.00, and two-thirds

of this, or $470.00, would have been used to offset her survivor's benefit. Because the $470.00 offset is greater than her monthly survivor's benefit of $391.00, Mrs. Batista would not have received any survivor's benefits.

that Congress meant to establish two separate dependency tests for men and women. As we have just discussed, the structure of the statute compels the contrary conclusion. Moreover, Section 7 of Pub.L. No. 97–455 defines dependency in terms of a numerical standard. We have some question whether any test would be "equivalent to" a *one-half* dependency test other than a *one-half* test. Although the language of the statute is far from clear, on balance we believe that Congress, perhaps inartfully, used the expression "or an equivalent test (if the individual is a woman)" simply to mean that women also would be required to meet a one-half support test, and that that test would be the same one that men were required to meet.[3]

We believe that the legislative history of the pension offset exemption of Pub.L. No. 97–455 clearly supports our conclusion that Congress intended to establish a single one-half dependency test for men and women. The conference report on Pub.L. No. 97–455 states explicitly that "the one-half support test would be applied according to the pre–1977 law, except that it would apply to both men and women." House Conference

Report No. 97–985, 97th Cong., 2d Sess., 12–13, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4399, 4403. In addition, many statements by individual legislators, including the principal sponsors of the bill, *see, e.g.,* 128 Cong.Rec. H10673 (daily ed. Dec. 21, 1982) (statement of Rep. Rostenkowski); 128 Cong.Rec. H10675 ex. 1 & 2 (daily ed. Dec. 21, 1982) (examples of how the new dependency provisions would be applied); 128 Cong.Rec. H9663 (daily ed. Dec. 14, 1982) (statement of Rep. Pickle), refer specifically to the one-half support test as applying to both men and women.[4]

In light of the above, we conclude that the Secretary is correct in his judgment that the language of Section 7 of Pub.L. No. 97–455 establishes a single one-half dependency test for both men and women. At the very least, the Secretary's interpretation of Section 7 is both reasonable and a proper construction of the statute, and thus is entitled to deference from us. *See Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983); *Turner v. McMahon,* 830 F.2d 1003, 1007 (9th Cir.1987).[5]

3. The Supreme Court, albeit in dicta, has apparently reached the same conclusion. The Court referred to Section 7 of Pub.L. No. 97–455 as creating an exemption for *any person* eligible for a pension "prior to July 1983, who satisfies *a half-support* dependency test." *Heckler v. Mathews,* 465 U.S. at 733 n. 3, 104 S.Ct. at 1392 n. 3. (emphasis added).

4. Mrs. Batista points to the statement of Rep. Oakar as providing support for her construction of the statute. Rep. Oakar stated that Section 7 extended the pension offset exemption "to both male and female public pensioners who pass dependency *tests.*" 128 Cong.Rec. H10676 (daily ed. Dec. 21, 1982) (statement of Rep. Oakar) (emphasis added). While this statement could be interpreted as saying that Section 7 created two separate dependency tests for men and women, that is not the only reasonable interpretation. An equally plausible interpretation would be that Rep. Oakar was speaking in the conjunctive, that is, that multiple persons who passed the test would be eligible for an exemption from the pension offset. We do not believe that so ambiguous a statement carries much weight. In any event, even if we were to accept Mrs. Batista's interpretation of Rep. Oakar's statement, we would still afford it little weight in relation to the joint conference report and the statements of the two primary sponsors of

the bill, Representatives Rostenkowski and Pickle.

While, of course, "subsequent legislative history is not conclusive," *Morgan Guaranty Trust Co. of New York v. American Savings & Loan Association,* 804 F.2d 1487, 1492 (9th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987), we think it is worth noting that the joint committee report on Pub.L. No. 98–21, passed just four months after Pub.L. No. 97–455 and amending the pension offset provision of the latter statute, described that provision as applying to *"persons* who ... meet *a "one-half" support dependency test."* House Conference Report No. 98–47, 98th Cong, 1st Sess. 155, *reprinted in* 1983 U.S.Code Cong. & Ad.News 404, 445 (emphasis added).

5. Moreover, Mrs. Batista has failed to identify any "equivalent test" under which she could qualify for an exemption. While she correctly asserts that it would be the Secretary's responsibility to formulate an "equivalent test" (if the statute so required), Mrs. Batista would still have the burden of showing that she could qualify for the exemption. She submitted evidence of her yearly earnings as well as those of her husband from 1960 until his death in 1968. Under the Secretary's pooling approach, only in 1960 would Mrs. Batista have been able to argue credibly that she could meet any sort of a test equivalent to the one-half support test.

Accordingly, the decision of the district court is affirmed.

AFFIRMED.