Margaret M. JEPSON, Plaintiff–Appellant,

v.

U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant–Appellee.

No. 91–1871.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1992.

Decided Oct. 21, 1992.

Robertson Hadley Wendt, Jr., Hollings & Nettles, P.A., Charleston, S.C., argued for plaintiff-appellant.

Mark Scott Ledford, Office of the Gen. Counsel, Dept. of Health & Human Services, Atlanta, Ga., argued (Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., John S. Simmons, U.S. Atty., Wistar D. Stuckey, Asst. U.S. Atty., Columbia, S.C., Bruce R. Granger, Chief Counsel, Region IV, Mack A. Davis, Deputy Chief Counsel for Social Sec. Litigation and Programs, James N. Stephens, Principal Regional Counsel for Social Sec. Retirement and Survivors Ins. and John Jarrett, Asst. Regional Counsel, Office of the Gen. Counsel, Dept. of Health & Human Services, Atlanta, Ga., on brief), for defendant-appellee.

Before PHILLIPS and SPROUSE, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

FRANK A. KAUFMAN, Senior District Judge:

When Margaret N. Jepson (Mrs. Jepson) sought and was granted Social Security widow's insurance benefits, she was also receiving a pension resulting from her own past earnings as a federal government employee. When such a grant in the amount of $248 per month was initially approved, the Social Security Administration (Administration) did not deduct any amount from those widow's benefits because of that pension. However, subsequently, the Administration notified Mrs. Jepson that a reduction from $248 per month to $62 per month was required by applicable law and regulation.

Mrs. Jepson's challenge to that ruling was rewarded by a decision in her favor by an Administrative Law Judge (ALJ). However, that victory proved short-lived, as the Social Security Appeals Council (Council), acting on its own motion, reversed the ALJ's decision and ordered the monthly benefit reduced to $62. Because Mrs. Jepson herself had furnished the Administration with correct information, the Council determined not to require Mrs. Jepson to refund the approximately $12,000 of overpayments which she had received prior to the date of the Council's ruling. The latter constituted the final decision of the Secretary of the Department of Health and Human Services (Secretary).

Mrs. Jepson timely noted an appeal to the United States District Court for the District of South Carolina. That court referred the case to Magistrate Judge Carr for final disposition with consent of the parties pursuant to 28 U.S.C. § 636(c). Magistrate Judge Carr, in a final Order of

the District Court, affirmed the decision of the Secretary. Mrs. Jepson then appealed to this Court. We affirm.

## I.

Mr. and Mrs. Jepson had three minor children when Mr. Jepson died in 1970. Their applicable respective annual incomes were $9207 for Mr. Jepson and $4623 for Mrs. Jepson, totalling $13,830. Section 202(e)(7) of the Social Security Act, 42 U.S.C. § 402(e)(7), provides that a widow's benefit shall be reduced by two-thirds of any federal government pension.[1] The Secretary, acting pursuant to 42 U.S.C. § 405(a),[2] issued a regulation, namely 20 C.F.R. § 404.408a, which renders inapplicable the pension offset if the widow was entitled to the pension before December 1982, *or* if the widow was entitled to the pension before July 1983 and was receiving at least one-half of her support from her husband at the time of his death.[3]

Mrs. Jepson became entitled to her pension effective March 1983. Accordingly, the December 1982 date is inapplicable herein. But Mrs. Jepson claims that because (1) her government pension began in March 1983, she was entitled to it before July 1983 and (2) *she was receiving at least one-half of her support from her husband when he died.* The ALJ agreed. He divid-

ed both the $13,830 of total income and Mrs. Jepson's separate income of $4623 by five (the total number of family members), obtained thereby the respective figures of $2766 and $924, and concluded that Mrs. Jepson's total support was $2766 (one-fifth of the joint income), that she contributed $924 (one-fifth of $4623) to her own support, and that she was thus receiving more than one-half of her individual support from Mr. Jepson when he died.

The Council disagreed with the ALJ, concluding that the figure of $2766 for Mrs. Jepson's support was correct but that all of Mrs. Jepson's earnings of $4623 were available for her own support, and that accordingly, she did not receive one-half of her support from her husband—indeed, her own total support was more than accounted for by her own earnings. In so doing, the Council utilized the so-called "pooled fund" method which is set forth in *Drombetta v. Secretary, Department of Health and Human Services,* 845 F.2d 607 (6th Cir.1987), and in Social Security Ruling 89-1(c), effective January 3, 1989. *See also Batista v. Sullivan,* 882 F.2d 1480 (9th Cir.1989). In both *Drombetta* and *Batista,* the approach followed by the Council in the within case was unsuccessfully challenged by widows who had no dependent children at the time of the deaths of their husbands.

1. Section 202(e)(7) states in relevant part:

 (A) The amount of a widow's insurance benefit for each month ... shall be reduced (but not below zero) by an amount equal to two-thirds of the amount of any monthly periodic benefit payable to the widow ... for such month which is based upon her earnings while in the service of the Federal Government....

 42 U.S.C. § 402(e)(7)(A) (1988).

2. Section 405(a) provides, in relevant part:

 The Secretary shall have full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions, and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder.

 42 U.S.C. § 405(a) (1988). That delegated power and authority has been characterized by the

Supreme Court as "exceptionally broad." *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1956, 76 L.Ed.2d 66 (1983) (quoting *Schweiker v. Gray Panthers,* 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981)).

3. That regulation states in pertinent part:

 (a) Unless you meet one of the exceptions in paragraph (b) of this section, your monthly Social Security benefits as a ... widow ... will be reduced each month you are receiving a monthly pension from a Federal ... government agency....

 (b) The reduction does not apply:

 ....

 (3) If you were receiving or were eligible ... to receive a Government pension for one or more months before July 1983, and you meet the dependency test of one-half support that was applied to claimants for husband's and widower's benefits in 1977, even though you don't claim benefits, and you don't actually meet the requirements for receiving benefits until a later month.

 20 C.F.R. § 404.408a(a).

## II.

■ In this Court's view, the so-called "pooled fund" approach constitutes pooling for the Jepson family's five members of the total income of the decedent and Mrs. Jepson, but entirely eliminates pooling of Mrs. Jepson's individual income. That creates an initial impression of arbitrariness and capriciousness. But that impression requires analysis in the light of the underlying legislation, 42 U.S.C. § 402(e)(7), which reduces the widow's benefit by two-thirds of her own pension, and the applicable regulation, 20 C.F.R. 404.366(b), which refers to "any income which is available to [the widow] for [her own] support whether or not that income is actually used for [her own] ordinary living costs."[4] Seemingly there was no requirement that the Secretary modify the terms of the statute itself. Seemingly, also, what the Secretary did, in effect, was to promulgate a type of grandfather clause. The Secretary had the discretion to modify the statute's provisions only to the extent that such modification was not in itself arbitrary or capricious. In that context, it is hard to classify as arbitrary and capricious, the Secretary's failure to permit full pooling as to a widow by providing for pooling with respect to both parts of the formula, i.e., the widow's own income as well as the total family income provided by the widow and her deceased husband. Without too much discussion, the two Circuit Courts which rejected challenges similar to Mrs. Jepson's within appeal so concluded.

It is true, as is urged in this case by Mrs. Jepson, that in *Drombetta* and *Batista,* the families consisted of only husband and wife, and no children. On that ground Mrs. Jepson asks this Court to hold that the "pooling approach" of the Secretary, even if appropriate when there is only a two-member family, is unfair in the within five-member family situation. But if the $13,830 total income of Mr. and Mrs. Jepson is divided only by two and the three children are disregarded, Mrs. Jepson's $4623 of earnings is still more than one-half of $6915, *i.e.,* one-half of $13,830.

In one or more of the administrative phases of this case, Mrs. Jepson also contended that the real income of her husband was undervalued because it did not include the free medical care and certain perquisites such as commissary, Post Exchange ("PX") and Officers' Club privileges, available to Mr. Jepson as a retiree from military service. No evidence has been provided or even proffered as to the precise value of such medical care and privileges. But even if they are valued, *in toto,* at $10,000, and the total family income is increased to $23,830, one-fifth of $23,830 is $4766, and $4623 is much more than one-half of $4766. Indeed the total family income would apparently need to be $46,235 in order for one-fifth of that amount, $9,247 to be more than double $4623.

Thus, Mrs. Jepson is reduced to the contention that the Secretary's pooled approach as applied in this case is arbitrary and capricious and exceeds the Secretary's authority as delegated by the Congress. *See, e.g., Sullivan v. Zebley,* 493 U.S. 521, 528, 110 S.Ct. 885, 890, 107 L.Ed.2d 967 (1990) ("Since the Social Security Act expressly grants the Secretary rulemaking power ... 'our review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory authority and whether they are arbitrary and capricious.'") (quoting *Bowen v. Yuckert,* 482 U.S. 137, 145, 107 S.Ct. 2287, 2293, 96 L.Ed.2d 119 (1987) in which the Court quoted from *Heckler v. Campbell,* 461 U.S. 458, 466, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983)). The Supreme Court has observed that

an agency rule would be arbitrary and capricious if the agency has relied on

---

**4.** That regulation states in pertinent part:

(b) The insured person provides one-half of your support if he or she makes regular contributions for your ordinary living costs; the amount of these contributions equals or exceeds one-half of your ordinary living costs; and any income (from sources other than the insured person) you have available for support purposes is one-half or less of your ordinary living costs. We will consider any income which is available to you for your support whether or not that income is actually used for your ordinary living costs.

20 C.F.R. § 404.366(b).

factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). " '[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is' . . . whether the agency's construction is 'rational and consistent with the statute'. . . ." *Sullivan v. Everhart,* 494 U.S. 83, 89, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting *Chevron v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) and *NLRB v. Food & Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987)).

 If the Secretary's regulations are rational and consistent with the statute, *see id.,* they cannot be disregarded, even when interpretation or application of a remedial statute such as the Social Security Act is at stake. In this case, in that context, the challenged decision of the Secretary can withstand, in our view, Mrs. Jepson's challenge based upon arbitrariness and capriciousness. If the result is unpalatable to the Congress, the latter can, of course, enact legislation calling for a different result in a case such as this one.

AFFIRMED.

SPROUSE, Circuit Judge, dissents and files an opinion.

SPROUSE, Circuit Judge, dissenting:

I respectfully dissent. No matter how nicely the equation is drawn, the inevitable interpretation of the Secretary's regulation is that the deceased Mr. Jepson's income was required for the support of himself, his wife, and their three children, but that Mrs. Jepson's income was used solely for her support.

The Secretary's "pooled fund method" is arbitrary and capricious insofar as it as-

sumes that all of a wife's income is available for her support alone. When a family consists of only two wage earners, the assumption is reasonable. *See, e.g., Drombetta v. Secretary of Health & Human Servs.,* 845 F.2d 607, 610 (6th Cir.1987). If that were the case here, it would be reasonable to assume that Mrs. Jepson had her full $4,623 income available to cover her $6,915 (one-half of the family income) in costs. But it is unreasonable to make that assumption where, as here, there are other dependents. The Secretary's assumption is that Mrs. Jepson had her full $4,623 income available to cover her costs of only $2,766 (one-fifth of the family income). Quite obviously, Mrs. Jepson did not have $4,623 available for just herself; she had a husband and three children to support as well.

It is clear that the combined small incomes of a family such as the Jepsons must be entirely consumed by the maintenance of all members of the family. To decree by administrative fiat that the husband's income is to be considered as supporting the whole family while that of the wife is considered hers alone is, in and of itself, arbitrary and capricious. I would reverse.