Charles R. PAGTER, Plaintiff–Appellant,

v.

Larry G. MASSANARI,* Acting Commissioner of the Social Security Administration, Defendant–Appellee.

No. 99–16619.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 2001

Filed May 21, 2001

---

* Larry G. Massanari is substituted for his predecessor as Acting Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Richard A. Derevan and Athena Roussos, Snell & Wilmer L.L.P., Irvine, California; and Charles R. Pagter, pro se, Albany, California, for the plaintiff-appellant.

Geralyn A. Gulseth, Assistant Regional Counsel, Social Security Administration, San Francisco, California, for the defendant-appellee.

Before: PREGERSON, FERNANDEZ, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Plaintiff Charles Pagter sought review in district court of a decision of the Social

Security Administration (SSA) denying him "husbands' benefits" on his wife's Social Security account. We affirm, but remand to allow the SSA to take evidence concerning Plaintiff's contribution to his retirement annuity.

## FACTS AND PROCEDURAL HISTORY

In 1982, Plaintiff retired after 32 years as an employee of the United States Postal Service (Postal Service). As a federal employee who retired before 1984, Plaintiff is not covered by—and did not pay into—the Social Security System. Instead, he paid into the Civil Service Retirement System (CSRS). In October 1982, Plaintiff began to receive a monthly "retirement annuity" of $1,875 from the CSRS.

In November 1992, Plaintiff's wife, Alice Pagter, retired from her job with the University of California. She applied for Social Security benefits in November 1993 and began receiving benefits in March 1994.

In June 1994, Plaintiff applied for husbands' benefits on Alice's Social Security account. The SSA awarded benefits, which it began paying in July 1994. However, the SSA later determined that, because Plaintiff was receiving a monthly retirement benefit based on his service with the federal government, his husbands' benefits were subject to the offset provision in 42 U.S.C. § 402(c)(2)(A). That offset reduced his husbands' benefits to zero. The SSA also determined that Plaintiff did not fall within the "half-support" exception to the offset, because he had not received at least one-half of his support from Alice during the 12 months before she began receiving Social Security benefits (March 1993–February 1994).

Plaintiff requested reconsideration, and the SSA affirmed its decision. Plaintiff requested a hearing before an Administrative Law Judge (ALJ). At that hearing, Plaintiff argued that he was entitled to the half-support exception and presented evidence of his and his wife's earnings. Plaintiff presented further evidence and argument in a post-hearing letter to the ALJ, dated December 5, 1996. On January 2, 1997, the ALJ affirmed the SSA in a written order. In affirming the SSA, the ALJ considered the level of support that Alice had provided during the 12 months after Plaintiff became eligible to receive his retirement annuity in 1981. As the SSA concedes, that was error; the relevant period was the 12 months before Alice began receiving Social Security benefits in March 1994.

Plaintiff appealed the ALJ's decision to the Appeals Council in a letter dated March 5, 1997. In that letter, Plaintiff argued that he was entitled to the half-support exception because his wife had provided him more than $70,000 in nonmonetary support, in the form of housework, chores, and home repairs, during the 12 months in question. Plaintiff stated in his letter that he also was performing home repairs at the time, but did not attempt to assign a monetary value to his efforts.

In June 1998, the Appeals Council denied review. In its order denying review, the Appeals Council looked at the correct 12–month period (March 1993–February 1994) in determining that Plaintiff was not entitled to the half-support exception. The council considered but rejected Plaintiff's assertion that Alice had provided $70,000 in nonmonetary support during that period, stating: "[T]he 'services' which you allege she provided to you for your support merely represent a part of the normal division of routine household tasks, not contributions by your wife toward the cost of your support as envisioned in 20 C.F.R. 404.366(b)."

Plaintiff sought judicial review in district court. He filed a motion for summary

judgment, and Defendant filed a cross-motion for summary judgment. The district court granted Defendant's motion and denied Plaintiff's. Plaintiff timely appeals.[1]

## STANDARD OF REVIEW

 This court reviews de novo a district court's order upholding a denial of social security benefits. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999). On de novo review, the decision of the Commissioner of the Social Security Administration must be upheld if it is supported by substantial evidence and if the Commissioner applied the correct legal standards. *Id.*

## DISCUSSION

### I. *Background*

The following explanation of the SSA's "pension offset" is drawn primarily from the Supreme Court's opinion in *Heckler v. Mathews,* 465 U.S. 728, 730–34, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984).

The Social Security Act provides spousal benefits for husbands and wives of retired and disabled wage earners. 42 U.S.C. § 402. Before 1977, such benefits were payable only to those husbands who could show that they depended on their wives for more than one-half of their support, while wives were entitled to benefits whether or not they depended on their husbands at all. In 1977, the Supreme Court held that the gender-based dependency requirement violated equal protection, first with respect to widowers' benefits, *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), and then with respect to husbands' benefits, *Califano v. Silbowitz,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977) (mem.), *aff'g* 397 F.Supp. 862 (S.D.Fla.1975); *Califano*

*v. Jablon,* 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 768 (1977) (mem.), *aff'g* 399 F.Supp. 118 (D.Md.1975).

Following those opinions, Congress repealed the dependency requirement for husbands. Social Security Amendments of 1977, § 334(b)(1), Pub.L. No. 95–216, 91 Stat. 1509. It also concluded, however, that eliminating the test could create an unexpected drain on the treasury by increasing the number of husbands who were entitled to benefits. *See* S.Rep. No. 95–572, pp. 27–28 (1977). Congress was especially concerned about retired federal and state employees who would become eligible for husbands' benefits. Unlike most retirees, who must offset any dual Social Security benefits against each other, 42 U.S.C. § 402(k)(3)(A), retired government employees were eligible to receive *both* their full government pensions *and* full spousal benefits, with no offset.

To address that concern, Congress included a "pension offset" in the 1977 amendments to the Social Security Act. With respect to husbands' benefits, that offset, codified at 42 U.S.C. § 402(c)(2)(A), provides: "The amount of a husband's insurance benefit for each month ... shall be reduced (but not below zero) by an amount equal to two-thirds of the amount of any monthly periodic benefit payable to the husband ... for such month which is based upon his earnings while in the service of the Federal Government."

However, Congress also was concerned about upsetting the expectations of federal employees who had planned their retirements in reliance on the pre–1977 version of the Social Security Act. In order to protect those employees, Congress enacted a five-year "grace period," exempting from the offset those retirees who (1) would

---

1. Plaintiff originally appealed pro se. This court appointed pro bono counsel and or-dered supplemental briefing from both parties.

become eligible for government retirement benefits between January 1977 and December 1982 and (2) would have qualified for spousal benefits under the Social Security Act "as it was in effect and being administered in January 1977." Social Security Amendments of 1977, § 334(g)(1), Pub.L. No. 95–216, 91 Stat. 1546.

Plaintiff became eligible to receive his retirement annuity from the Postal Service between January 1977 and December 1982. Accordingly, he would be entitled to the exemption from the pension offset if he would have qualified for husbands' benefits under the Social Security Act as it was being applied in January 1977. Accordingly, Plaintiff must show that he received more than one-half of his support from his wife during the 12–month period before she began receiving Social Security benefits.[2]

The SSA has promulgated administrative rules covering the offset and the half-support exception for husbands. The offset is addressed in 20 C.F.R. § 404.408a(a), which provides: "[Y]our monthly Social Security benefits as a ... husband ... will be reduced each month you are receiving a monthly pension from a Federal, State, or local government agency ... for which you were employed in work not covered by Social Security."

The half-support exception is covered by 20 C.F.R. § 404.366(b), which provides, as relevant:

> The insured person provides one-half of your support if he or she makes regular contributions for your ordinary living costs; the amount of these contributions equals or exceeds one-half of your ordinary living costs; and any income (from sources other than the insured person) you have available for support purposes is one-half or less of your ordinary living

costs. We will consider any income which is available to you for your support whether or not that income is actually used for your ordinary living costs. Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. A contribution may be in cash, goods, or services.

In determining whether a party meets the half-support requirement under 20 C.F.R. § 404.366, the SSA uses the "pooling" or "pooled-fund" method, "which creates a rebuttable presumption that members of a household pool their income and are supported equally by the combined amount." *Batista v. Sullivan,* 882 F.2d 1480, 1481 (9th Cir.1989); *see also* Social Security Ruling 84–20a. Under the pooling method, the SSA (1) combines the income of the husband and wife; (2) divides the "pooled" income by two, to determine the cost of the husband's support; and (3) looks at the husband's individual income to see whether it is less than or equal to one-half of the cost of his support. If it is, then he receives one-half or more of his support from his wife and is entitled to the exception. Social Security Ruling 84–20a.

Plaintiff argues that he was not subject to the pension offset or, alternatively, that he qualifies under the half-support exception.

II. *Plaintiff's retirement annuity is a "pension" for purposes of 20 C.F.R. § 404.408a(a).*

█ First, Plaintiff argues that the offset should not have been applied to him. The statutory offset applies to "any monthly periodic benefit payable to the husband" on account of his service with the federal government. 42 U.S.C. § 402(c)(2)(A).

---

**2.** In *Heckler,* 465 U.S. at 751, 104 S.Ct. 1387, the Supreme Court affirmed the constitutionality of the five-year grace period, which tem-

porarily revived the gender-based dependency requirement that had been held unconstitutional in *Goldfarb* and its progeny.

The SSA's rule administering the offset speaks in terms of "pensions." 20 C.F.R. § 404.408a(a). Plaintiff argues that he receives an "annuity," not a "pension," so the offset does not apply to him. Defendant counters that Plaintiff's annuity is a "pension" within the meaning of 20 C.F.R. § 404.408a(a).

■ That regulation does not define the term "pension." An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (citations and internal quotation marks omitted). Here, the SSA's interpretation that the term "pension" is broad enough to encompass Plaintiff's retirement annuity from the CSRS is neither plainly erroneous nor inconsistent with the regulation.

First, as a matter of ordinary legal usage, the words "pension" and "annuity" are neither mutually exclusive nor contradictory. Generally speaking, an "annuity" is "[a]n obligation to pay a stated sum, usu[ally] monthly or annually, to a stated recipient." *Black's Law Dictionary* 88 (7th ed.1999). A "pension" is "[a] fixed sum paid regularly to a person (or to the person's beneficiaries), esp[ecially] by an employer as a retirement benefit." *Id.* at 1155. Thus, as a general matter, a fixed pension that is paid monthly (like Plaintiff's) is a kind of annuity. Some pensions are annuities; some annuities are pensions. There is no overarching reason why a benefit labeled an "annuity" cannot also be a "pension."

Second, Plaintiff's argument would make the pension-offset provision of 42 U.S.C. § 402 largely inapplicable to federal employees. As noted, pre–1983 federal retirees are covered by the CSRS, with exceptions not relevant here. The CSRS provides retirement benefits in lieu of Social Security benefits, under 5 U.S.C. chs. 83 and 84.

The CSRS uniformly labels its retirement benefits "annuities," not "pensions." *See, e.g.,* 5 U.S.C. § 8311(2) (" 'annuity' means a retirement benefit . . . payable by an agency of the Government of the United States . . . on the basis of service as a civilian employee"). Plaintiff's "annuity" is not a unique benefit that was crafted to meet his individual retirement needs; it is the same retirement benefit—with the same name—that federal employees with more than five years on the job are entitled to receive. 5 U.S.C. § 8333.

Accordingly, if Plaintiff were correct that the "pension offset" in 20 C.F.R. § 404.408a(a) cannot be applied to a retirement benefit that is labeled an "annuity," then Civil Service retirees, who receive "annuities," are exempt from the offset. That would be an extraordinary result in view of Congress' purpose in creating the offset specifically to cover retirees who were receiving "any monthly periodic benefit . . . based upon . . . earnings while in the service of the Federal Government." 42 U.S.C. § 402(c)(2)(A).

Plaintiff also argues that the offset should not apply to him because his "annuity" was "based solely on his own contributions," whereas a "pension" is funded by contributions from both employee and employer. More specifically, he argues that the only evidence in this record is that he was the only contributor to his annuity. The evidence to which Plaintiff refers is his 1995 letter to the SSA, in which he states: "What I receive is a Civil Service Annuity, that was paid for by me throughout my working career in Gov't service. This is no different than an annuity in the Private Sector in which the employee pays an amount matched by his employer which is invested by a bonded Board of Directors for the benefit of the retirees." Because

that is the only evidence in the record about contributions to the annuity, Plaintiff argues, we must either (1) rely on that evidence and conclude that the annuity was not a "pension" because he funded it by himself, or (2) remand for more evidence about how the annuity was funded.

That argument is unpersuasive. Plaintiff did not fund his CSRS annuity solely through his own contributions. As an employee of the Postal Service, Plaintiff was covered by the CSRS. 39 U.S.C. § 1005(d)(1). As a matter of law, CSRS annuities are funded equally by employee and employer contributions. 5 U.S.C. § 8334. That is, Plaintiff's employer was required by law to contribute to his annuity. There is no evidence (or argument) that the Postal Service failed to follow the requirements of 5 U.S.C. § 8334 in this case.

■ At oral argument, however, the parties agreed that Plaintiff voluntarily could have contributed extra funds to his annuity account. The record is silent on the question whether Plaintiff did so. If he did, it is possible that the amount of his extra contributions would reduce the government's share of the annuity payment to less than the $437.90 monthly husbands' benefit that Plaintiff otherwise would receive from the SSA. We therefore remand to the district court with instructions to remand to the SSA for the limited purpose of taking evidence to determine whether Plaintiff made extra contributions to his annuity account and, if so, whether his additional contributions were sufficient to change the amount of his pension offset.

III. *Plaintiff is not entitled to the half-support exception.*

Plaintiff argues that the SSA erred in refusing to consider his wife's contributions of housework and home repairs, which Plaintiff values at more than $70,000, in its calculations of the couple's pooled income. If the SSA had considered those contributions, Plaintiff argues, it would have found that Alice contributed more than one-half of his support during the relevant period.

The parties' arguments on this issue are focused on the question whether the Appeals Council erred in refusing to consider Alice's nonmonetary contributions to Plaintiff's support. We decline to address that legal question. Even assuming that the SSA should have considered the contributions to which Plaintiff refers, Alice still did not contribute more than one-half of Plaintiff's support. That being so, the error, if any, was harmless.

Plaintiff's argument is based on a mathematical error. The largest single item in Plaintiff's list of "Wife's Contributions to My Support" is "Housekeeper." Plaintiff assigns a dollar value to that task as follows: "4 Hr/Day × 300 [days] × $4.50/Hr (12,150 Hrs/yr × $4.50 [per hour] = $54,540)." The problem is that four and one-half hours a day times 300 days does not equal 12,150 hours; it equals only 1,350 hours. And 1,350 hours at $4.50 per hour comes to $6,075, not $54,540. With that mistake corrected, the total dollar value that Plaintiff assigns to Alice's labor as "housekeeper" is $21,644, rather than $70,109.75.

When the correct figure is inserted into Plaintiff's "pooled income" calculations, Plaintiff does not satisfy the half-support test, even accepting his assertion that Alice's household contributions were contributions to his support under 20 C.F.R. § 404.366. Alice's cash income during the 12 months in question was $27,197.47, and Plaintiff's was $21,936; thus, their total cash income was $49,133.47. Adding the value that Plaintiff assigns to Alice's labor, $21,644, the total level of "family support" is $70,777.47. One-half of that amount—$35,388.73—is presumed to be the cost of

Plaintiff's support. Plaintiff's income from his annuity—$21,936—was greater than one-half of that amount; accordingly, Plaintiff provided more than one-half of his support and is not entitled to the half-support exception.

██ Plaintiff also argues that the SSA should not use the pooled-fund method. Plaintiff's argument essentially is that he has a better method for determining whether a claimant's wife provides more than one-half of her husband's support. Plaintiff presents his "method" in mathematical terms, but it may be reduced to the following simple question: Did the claimant's wife earn more money than he did during the relevant 12–month period? If so, even if the difference in income is one dollar, then the claimant satisfies Plaintiff's version of the half-support test.

This court has applied the pooled-fund method in one case, *Batista*, 882 F.2d at 1481, but has not explicitly considered its validity. The two circuits that have addressed the validity of the test both concluded that it was a valid exercise of the SSA's delegated powers. *Jepson v. United States Dep't of Health & Human Servs.*, 977 F.2d 911, 915 (4th Cir.1992); *Drombetta v. Sec'y of Health & Human Servs.*, 845 F.2d 607, 609–10 (6th Cir.1987).

As those circuits held, the pooled-fund method represents the SSA's interpretation of its regulation defining "one-half support," 20 C.F.R. § 404.366. The agency's interpretation is entitled to deference unless it is erroneous or inconsistent with the regulation. Plaintiff does not explain why the SSA's interpretation fails under that deferential standard, nor do we see any reason why it would. Plaintiff suggests another way to determine "one-half support" but, even if his method also were a permissible interpretation of the regulation, he cannot prevail unless the SSA's interpretation is wrong. It is not.

## CONCLUSION

For the reasons stated, we AFFIRM, but REMAND the case to the district court with instructions to remand to the SSA so that it can take evidence concerning Plaintiff's contribution to his retirement annuity. Each party is to bear its own costs on appeal.