Cassandra FODOR, for herself and on behalf of Andrew and Wendy Siemion, minor children aka Cassandra Eschweiler, Plaintiff–Appellant,

v.

Larry G. MASSANARI,* Acting Commissioner of the Social Security Administration, Defendant–Appellee.

No. 01–35124.
D.C. No. CV–99–01648–RSL.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 9, 2001.**

Decided Nov. 27, 2001.

---

* Larry G. Massanari, as Acting Commissioner of the Social Security Administration, is substituted for his predecessor in office pursuant to Fed. R.App. P. 43(c)(2).

** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before CHOY, SKOPIL and FERGUSON, Circuit Judges.

## MEMORANDUM ***

Cassandra Fodor appeals pro se from the district court's judgment and order affirming the decision of the Commissioner of the Social Security Administration ("the Commissioner"). The Commissioner ruled that Fodor and her children were not entitled to survivor's benefits under the Social Security Act, 42 U.S.C. § 402(d) and (g). Fodor argues that the district court should have reversed the Commissioner's decision and reinstated the Administrative Law Judge's ("ALJ") decision awarding them benefits because the ALJ evaluated the live testimony and his decision was supported by substantial evidence. Fodor also argues that the Commissioner's decision was not supported by substantial evidence and that the district court's order contained various errors and omissions. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

Fodor's husband, Frederick Eschweiler, committed suicide on February 27, 1995. The Social Security Administration ("SSA") denied Fodor's application for mother's benefits for herself and child's benefits for Wendy and Andrew Siemion

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

("Wendy and Andrew"), her children from a previous marriage. On reconsideration, the SSA affirmed its decision. However, after a hearing, the ALJ ruled in Fodor's favor. In his decision, the ALJ noted that "[m]ost of the facts relied on by the parties to this case are probably true and would support a decision either way" and, due to Eschweiler's mental state at the time of his death, it was impossible to determine what his actual intent was regarding his living arrangement with Fodor. But, because Eschweiler never divorced Fodor, the ALJ inferred that he intended to continue living with her and her children.

The Appeals Council reversed the ALJ's decision. The Council rejected the ALJ's conclusion that the lack of a final divorce led to an inference that Eschweiler intended to continue residing with them and noted that Fodor gave inconsistent statements regarding their living arrangement. The Council concluded that the "probative evidence of record" indicated that Eschweiler was living with his parents at the time of his death. The decision became the final decision of the Commissioner.

Fodor appealed to the district court. Magistrate Judge Monica Benton recommended that the Commissioner's denial of benefits be affirmed and the district court agreed. The court noted that special deference is accorded to the ALJ's factual determinations based on the witnesses' demeanor and credibility at the hearing. However, because the ALJ made no determinations of the witnesses' credibility in the present case, the court determined that "the weight to be given his report and conclusion turns more on the underlying record than on his ability to observe witnesses at the hearing." Based on its independent review of the record, the district court found that there was substantial evidence supporting the Commissioner's determination that Fodor and Eschweiler were neither living together at the time of his death, nor did they expect or intend to live together.

The district court entered its judgment on April 16, 2001. This timely appeal followed. On appeal, Fodor apparently argues that: 1) the district court applied the wrong standard of review to the Commissioner's decision; 2) the Commissioner's decision was not supported by substantial evidence; and 3) errors and omissions in the district court's order warrant reversal. We disagree.

I. Standard of Review Applied by the District Court

■ Fodor argues that the district court should have reversed the Commissioner's decision and affirmed the ALJ's decision because the ALJ evaluated live witness testimony and the ALJ's decision was supported by substantial evidence. We have previously rejected, however, the argument that we are required to reverse the contrary Commissioner's decision and reinstate the ALJ's decision where the ALJ's decision is supported by substantial evidence. *Howard v. Heckler,* 782 F.2d 1484, 1487 n. 2 (9th Cir.1986) (discussing *Newsome v. Sec'y of Health & Human Servs.,* 753 F.2d 44 (6th Cir.1985)).

■ The district court correctly noted that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision must be affirmed if it is supported by substantial evidence and that this standard is not altered merely because the Commissioner's decision is based upon factual findings that are contrary to the ALJ's. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951) ("The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree."). The district court also acknowledged that, when the ALJ's factual determinations are based on its observa-

tions of the witnesses and their credibility, the findings are entitled to special deference. *See Paredes–Urrestarazu v. INS*, 36 F.3d 801, 818 (9th Cir.1994).

The district court concluded that the ALJ did not base its finding that Eschweiler was "living with" Fodor and her children on testimonial inferences and, therefore, did not give special deference to the ALJ's finding. Fodor argues that the ALJ's statement that most of the facts relied upon by the parties were probably true indicated that the ALJ did rely on his observations of the witnesses. However, the ALJ's report also states that the facts could support a decision either way. Its finding that Fodor was "living with" Eschweiler was ultimately based upon an inference that the lack of a final divorce indicated that they intended to resume living together. Because the ALJ's finding was based upon an inference from an undisputed fact and not upon his observations of the witnesses, the district court was not required to give the ALJ's finding special deference. The district court did not apply the wrong standard of review to the Commissioner's decision.

## II. Substantial Evidence to Support the Commissioner's Decision

■ We review a district court's order upholding the Commissioner's denial of benefits de novo. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.2001). We will affirm the district court's order if the Commissioner's decision is supported by substantial evidence and the Commissioner applied the correct legal standards. *Pagter v. Massanari*, 250 F.3d 1255, 1258 (9th Cir.2001). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support the conclusion in light of the entire record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999).

■ The disputed issue in this case is whether Eschweiler was "living with" Fodor and her children at the time of his death. We agree with the district court that there is substantial evidence in the record supporting the Commissioner's finding that Eschweiler was not "living with" them.

On the day of Eschweiler's death, Fodor told police that he was her estranged husband and that they had been separated since June 1994. Eschweiler's original death certificate, which lists Fodor as the informant, gives his parent's residence as his address. Fodor also had a temporary restraining order against Eschweiler at the time of his death. Shortly before Eschweiler's death, Fodor contacted her insurance company to inquire about canceling her joint policy with Eschweiler and insuring their cars under a policy issued to her alone.

Eschweiler's parents told the police that he had been living with them for the past year. Eschweiler's brother-in-law, on behalf of Eschweiler's father, submitted a letter to the SSA stating that Eschweiler had moved back in with his parents as early as 1993. Eschweiler's sister testified at the administrative hearing that he was living with their parents at the time of his death. Further, although he kept some items at Fodor's house, Eschweiler apparently kept most of his belongings at his parents' house. The record also includes statements from Eschweiler's attorney, friends, and neighbors that he was living with his parents, and mail sent to him at his parents' address. Eschweiler's ex-wife stated that he had moved out of Fodor's house and that he planned to move to California.

The district court did not err in concluding that there was substantial evidence to support the Commissioner's finding that

Eschweiler was not "living with" Fodor and her children at the time of his death.[1]

### III. Errors and Omissions in the District Court's Order

■ We review a district court's findings of fact for clear error and conclusions of law de novo. *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir.2001) (citation omitted).

■ Fodor is correct that the district court erroneously stated that the ALJ heard testimony from her bother; it was her father who testified. However, this error did not affect the ultimate issue whether Fodor and her children were "living with" Eschweiler and does not warrant reversing the court's decision.

Fodor also argues that the district court erred by: stating that she and Wendy gave inconsistent statements regarding Eschweiler's residence; stating that she planned to remove Eschweiler from her insurance policy; stating that Eschweiler had "very few of his belongings" at her house; and failing to note that the restraining order she obtained against Eschweiler was temporary. Finally, she argues that the Appeals Council erroneously ruled that they were not entitled to benefits solely on the basis of its finding that Eschweiler was not contributing one-half of Wendy and Andrew's support.

Fodor's arguments are without merit. The district court's findings regarding Fodor and Wendy's statements, Fodor's insurance policy, and Eschweiler's belongings were not clearly erroneous. The district court did recognize that the re-

straining order was temporary, and the Appeals Council clearly found that Eschweiler was neither supporting Wendy and Andrew nor "living with" them.

Based on the foregoing, we AFFIRM the district court's judgment and order affirming the Commissioner's denial of benefits.

FERGUSON, Circuit Judge, dissenting.

I respectfully dissent. In this case, the Commissioner's finding that Fodor and her children were not "living with" Eschweiler at the time of his death is not supported by the evidence. To the contrary, the record illustrates clearly that Eschweiler and Fodor intended to continue "living with" one another.

Although the majority applies the correct substantial evidence standard, I disagree with its application. "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999).

It is not reasonable to accept the evidence relied upon by the Commissioner in support of his conclusion. The Commissioner relied on five primary pieces of evidence. This reliance was misplaced. None of these five factors indicates that Eschweiler and Fodor did not intend to reunite.

---

1. Fodor also apparently argues that the Commissioner's findings are not supported by substantial evidence because the statements of Eschweiler's family, friends, neighbors, and attorney are hearsay and because there is nothing in the record establishing that she and Eschweiler intended to dissolve their marriage. However, the rules of evidence do not apply to Social Security hearings, 42 U.S.C. § 405(b)(1), and the Commissioner was not required to prove that Fodor and Eschweiler intended to dissolve the marriage, *see* 20 C.F.R. § 404.366(c) (defining when a stepchild is deemed dependent).

First, the Commissioner relied on the presence of the temporary restraining order ("TRO") that was issued three days prior to Eschweiler's death. The TRO was necessary due to Eschweiler's escalating mental problems. It was issued temporarily so that Eschweiler could receive counseling, attend anger management sessions, and see a psychiatrist to be stabilized on his medication. The record also reveals that Fodor contacted Eschweiler's psychiatrist and planned to attend a session with him to work toward stabilization. These facts demonstrate an intent to work through a period of temporary mental illness, not an intent to permanently separate.

Second, Eschweiler's attorney made a statement that, to the best of his knowledge, Eschweiler and Fodor did not reside at the same house. However, it is not reasonable to rely on this evidence in light of the fact that the same attorney sent Eschweiler a bill addressed to Fodor's house, two days prior to his death.

Third, a Christmas tree tax deduction form and an auto repair bill, both of which were addressed to Eschweiler, were sent to his parents' address. However, Fodor adequately explained this discrepancy in the record. She indicated that the tree had been a gift from Eschweiler to his parents and that they had paid for the car repairs. Naturally, then, the donation acknowledgment would go to the same address where the tree was delivered and the auto repair bill would be sent to their home.

Fourth, Eschweiler's ex-wife and family made statements that he was "living with" his parents at the time of his death. However, both his sister and ex-wife lived in a different state and had little personal contact with Eschweiler. Without the ability to see and understand the situation, their testimony should be carefully weighed and compared with the rest of the record.

Furthermore, it should be noted that the ex-wife only reported Fodor for Social Security fraud *after* the ex-wife's benefits were reduced and Social Security requested that she return the overpayment.

Finally, the Commissioner based his decision to deny Fodor and her children benefits on various police reports, which listed Eschweiler as "estranged," as well as the death certificate listing his parents' home as his. However, these facts are consistent with the undisputed fact that the couple *was only* temporarily separated at the time of Eschweiler's death.

In addition to the Commissioner's findings, the Magistrate Judge's Report and Recommendation, affirmed by the District Court, concluded that Eschweiler's recent behavior and suicide was provoked "in response to NOT being able to resume his former relationship with his wife." Mag. Report & Recommendation at 8 (emphasis in original). This conclusion is unwarranted. Eschweiler's mental illness and refusal to take his medication precipitated his behavior and resulted in his temporary separation. It is was not the separation which caused these events. This evidence, weighed against other testimony, such as that presented by Fodor's father that the couple was married in every sense of the word, supports a finding that Eschweiler and Fodor were "living with" one another at the time of his death.

In contrast to the Commissioner's finding, there is substantial evidence in the record demonstrating the couple's intent to work on their marriage and reunite. First, there is abundant evidence that Eschweiler routinely called and visited Fodor at her work place. They went on nightly walks together around the neighborhood. Similarly, Fodor testified at the administrative hearing that she and Eschweiler were together on Valentine's Day in 1995 and again on Eschweiler's birthday four days later. They had also traveled togeth-

er in February 1995 to visit Fodor's father in another part of Washington.

There is also substantial evidence in the record which indicates that Eschweiler was not only "living with" Fodor and her children at the time of his death, but was also exercising parental control over them as required by statute. 20 C.F.R. § 404.366(c). For example, he was listed on the children's report cards as the parent with the same phone number as Fodor. Also, the majority of Eschweiler's mail was sent either to Fodor's home or to a post office box to which they both had a key. Similarly, Eschweiler and Fodor filed joint tax returns for 1992 and 1993 and had gone together to their C.P.A.'s office to sign their returns. Fodor was also appointed as administrix of Eschweiler's estate.

Other evidence also indicates the couple's intent to remain together. For example, Eschweiler withdrew a dissolution certificate which he had filed two months earlier. This Court has recognized that the lack of a filed dissolution petition evidences a couple's intent to remain together. *Weatherby v. Sullivan,* 942 F.2d 639 (9th Cir.1991) (holding that the lack of no dissolution petition on file indicated an intent to live together again); *cf. Shaw v. Heckler,* 781 F.2d 675 (9th Cir.1985) (holding that the couple was permanently separated where dissolution petition was not withdrawn).

Finally, *Brickey v. Bowen,* 722 F.Supp. 318, 322 (S.D.Tex.1989), is instructive here, although not binding on this Court. In *Brickey,* the couple had been married for five months. On the night of the hus-band's death, the couple had an argument after which he left in his car with most of his belongings. *Id.* at 322. The court concluded that, although the couple had a "pattern of frequent, temporary separations followed by reconciliation," there was no evidence that the separation was intended to be permanent. *Id.* at 323. Likewise, Eschweiler and Fodor's separation was not intended to be permanent; they had every intent of staying together.[1]

The majority's holding today has far-reaching implications. It holds that a temporary separation due to mental instability is permanent. By finding a temporary separation permanent, this Court reads an intent to separate into a number of perfectly valid relationships. For example, does the majority suggest that a couple who temporarily separates does not intend to live together again? What about a couple whose spouse travels to another city for work most of the time and maintains a separate residence? Or, what about where a couple has an argument, and the spouse packs up his bags and threatens never to return? What result when a spouse with mental illness is forced to live in an institution?

I conclude that Eschweiler and Fodor were "living with" one another at the time of Eschweiler's death. Therefore, I would reverse the District Court and remand to the Commissioner with an instruction to award insurance benefits to Fodor and her children.

---

1. Also, during Eschweiler's suicide both Fodor's garage, and the cars parked inside, were burned. Allstate Insurance Company denied Fodor's related insurance claims because Eschweiler was her "resident spouse" at the time of his death. Allstate Insurance defines a "resident spouse" as someone who has a physical presence in the household with an intention of continuing to live there. It seems incongruous that Fodor could be denied her insurance claims because Eschweiler was her resident spouse, but also be denied Social Security because they were not "living with" one another at the time of his death.