Charles FROST, Plaintiff–Appellant,

v.

Jo Anne BARNHART, Commissioner of Social Security,* Defendant–Appellee.

No. 01–35580.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 12, 2002.

Filed Dec. 19, 2002.

of scrutiny. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224, 115 S.Ct. 2097, 2111, 132 L.Ed.2d 158 (1995).

* Jo Anne Barnhart is substituted for her predecessor as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Eitan Kassel Yanich, Olympia, WA, for the plaintiff-appellant.

Victoria Blais Chhagen, Assistant Regional Counsel, Social Security Administration, Seattle, WA, for the defendant-appellee.

Before: BEEZER, GOULD, and BERZON, Circuit Judges.

**OPINION\*\***

GOULD, Circuit Judge:

Charles Frost ("Frost") applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act (the "Act"). An administrative law judge ("ALJ") concluded that Frost was disabled between May 16, 1997 and October 31, 1997 but was not disabled thereafter and could perform simple, unskilled work tasks.

1. Using the Medical–Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ determined that simple, unskilled work suitable for Frost is widely available in the national economy and that, accordingly, Frost's disability does not entitle him to benefits under the Act after October 31, 1997. Frost argues that the decision of the Commissioner to deny him benefits for the period after October 31, 1997 was not supported by substantial evidence, as is required for affirmance. *See Pagter v. Massanari*, 250 F.3d 1255, 1258 (9th Cir.2001).

Frost sought to be classified as disabled on the ground that he is impaired by paranoid schizophrenia and obsessive-compulsive disorder. Frost's psychiatrist, Dr. Richard Price ("Price"), diagnosed him with both disorders in July 1996, but, according to Price's notes, Frost's condition had improved during the year and a half preceding his December 19, 1997 hearing. A course of medication had virtually eliminated his paranoid schizophrenic symptoms and had modified his obsessive-compulsive behavior, although some symptoms remained.

■ Frost challenges this conclusion by pointing first to two statements made by Price. On December 2, 1997, Price in his medical file noted that Frost continued to worry obsessively that his niece might be killed in an automobile accident while sleepwalking. On December 16, 1997, Price noted that Frost remained "quite symptomatic with his obsessive-compulsive disorder" and added, "I believe that it would be fair to give [Frost] a chance to succeed in the workplace but I would not be surprised if his condition interfered with his ability to be a fully productive employee." These statements do not indicate that Frost is disabled; instead, the latter statement suggests that Frost should be given a chance to work. Frost also points to a statement by other therapists who evaluated him in July 1999, whose medical file stated that "it would help [Frost's] self-esteem if he obtained a part-time job[;] however, judging from his history, it is questionable whether he could maintain it." Although skeptical, this statement also does not specify that Frost is too disabled to attempt simple work.

■ 2. Frost also argues that the district court did not properly consider the testimony that he and his sister provided at the hearing before the ALJ. Frost and his sister testified that he obsesses over his niece's sleepwalking; that he worries about the safety of both of his nieces every night when he goes to bed; that he must ask the same question repeatedly because of his poor memory; and that he does not drive by himself because he gets lost easily. But there is no reason to assume that these symptoms would interfere with his ability to do the kind of simple work that the ALJ suggested.

■ 3. Frost also testified that he sleeps from 2 a.m. to 2 p.m. every day, because his medication makes him drowsy.

\*\* This disposition is published pursuant to Ninth Circuit Rule 36–2(g), at the request of Judge Beezer.

However, Frost stated on July 22, 1997—five months before the hearing—that he was sleeping eight hours nightly. The record suggests that his sleep patterns may have changed because his doctors modified his medications. But as the ALJ said, there was no showing Frost had to stay up late and sleep late, and these purported symptoms do not negate the conclusion that there was substantial evidence for the Commissioner's decision on Frost's ability to do simple work.

■ 4. Although Frost argues that the ALJ improperly rejected his testimony as not credible, it rather appears that the ALJ accepted Frost's testimony as credible but found that it was not sufficient to demonstrate that he is disabled. However, if the ALJ finds on remand that Frost's testimony concerning his impairments is incredible or unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit Frost's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.2001).

5. Frost correctly notes that while the ALJ evaluated his obsessive-compulsive. disorder under section 12.06 of the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings"), she did not evaluate his paranoid schizophrenic disorder under section 12.03 of the Listings, which covers "Schizophrenic, Paranoid, and Other Psychotic Disorders." We conclude this omission warrants a remand.

When Frost applied for SSI in 1997, section 12.03 provided as follows:

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:

1. Delusions or hallucinations; or

2. Catatonic or other grossly disorganized behavior; or

3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

A. Blunt affect; or

B. Flat affect; or

C. Inappropriate affect;

or

4. Emotional withdrawal and/or isolation.

AND

B. Resulting in at least two of the following:

1. Marked restriction on activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely fashion (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors).

OR

C. Medically documented history of one or more episodes of acute symptoms, signs and functional limitations which at the time met the requirements in A and B of this listing, although these symptoms or signs are currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of deterioration or decompensation in situations which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors); or

2. Documented current history of two or more years of inability to function outside of a highly supportive living situation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03 (1997).

Section 12.03, which the ALJ did not review, and section 12.06, which the ALJ did review, have the same structure. In both, the requirements in A involve symptoms that are specific to the disorder under consideration—anxiety-related disorders in section 12.06, and psychotic disorders such as paranoid schizophrenia in section 12.03. In both, the requirements in B involve the effects of those symptoms. The requirements in B are identical in sections 12.03 and 12.06. The Magistrate Judge, in reviewing the ALJ's decision, reasoned that although section 12.03 had been ignored, it mattered not because the ALJ's determination that section 12.06B was not satisfied meant necessarily that 12.03B could not have been satisfied had it been considered.

This reasoning is correct, so far as it goes. But the Magistrate Judge overlooked an important point, namely, that in both sections part C provides an alternative means of demonstrating disability for those claimants who previously met the section's standards and whose symptoms have been treated by medication but who still could not function alone in a work environment.

Here, the ALJ found that Frost was disabled from May 16, 1996 to October 31, 1997 because he then met the requirements of sections 12.06A and B. She found that during that period he met the requirements in section 12.06B3 and 12.06B4. The ALJ found that after October 31, 1997, Frost satisfied only the requirement in 12.06B4. Because a claimant must satisfy two of the B criteria, she found that he was no longer disabled.

Since the ALJ did not evaluate Frost at all under section 12.03, she did not discuss the requirements of section 12.03A, nor did she consider the possible application of 12.03B or 12.03C. It is possible, however, that Frost satisfied the requirements of 12.03A and 12.03B during the period in which she held he was disabled under section 12.06. If so, he satisfied the threshold requirements for consideration under 12.03C. Consequently, it is possible that he could have been classified as disabled on that basis even after October 31, 1997, if he was able to show that at some point he had met the requirements of 12.03A and B, and that currently he was subject to repeated episodes of deterioration or had a documented current history of two or more years of inability to function outside of a highly supportive living situation.[1]

1. In 2000, section 12.03 was revised. *See* 65 Fed.Reg. 50,779–80 (Aug. 21, 2000) (codified at 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03). The current regulation still requires the claimant to satisfy both A and B, or C. *Id.* The changes to parts and A and B were not significant for our purposes. However, 12.03C was changed and it no longer includes a threshold requirement referencing parts A and B. Therefore, C now provides an alternative basis for classification that does not require the claimant to have satisfied the A and B requirements at any time. 12.03C now provides as follows:

> C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently at-

■ For the above reasons, we conclude that Frost may have met the requirements of section 12.03 under the regulations applicable at the time of his hearing, but the ALJ failed to address section 12.03. The government argues that Frost has waived any argument concerning the applicability of section 12.03C on the asserted ground that he did not raise it below. However, the record indicates quite clearly that in his opening brief in district court, Frost argued that his impairment met or equaled the requirements of section 12.03. If he met its requirements, he was entitled to relief. Because this issue was properly raised below, and because the district court did not consider the applicability of section 12.03C, we reverse and remand the case to the district court with instructions for it to remand to the Commissioner for further evaluation of Frost's disability under section 12.03, including 12.03C.[2]

Frost in his appellate brief asserts that if successful he intends to seek attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. The right to attorney's fees depends on whether Frost is the prevailing party and whether the Commissioner's position was "substantially justified." 28 U.S.C. § 2412(d)(1). Under *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), Frost is the prevailing party because we have remanded his case for further administrative proceedings under "sentence four" of 42

U.S.C. § 405(g). See *Flores v. Shalala*, 49 F.3d 562, 568 (9th Cir.1995). Whether or not the Commissioner's position was "substantially justified," however, should await the making of a timely motion for fees and briefing on that motion.

In light of our disposition of the various issues, we conclude that each party shall bear its own costs on appeal.

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

BEEZER, concurring in part and dissenting in part:

Charles Frost appeals the district court's judgment affirming the decision of the Commissioner of Social Security. The decision denies an award of Supplemental Security Income ("SSI") disability benefits to Frost after October 31, 1997 because Frost was no longer disabled after that date. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

I would affirm the Commissioner's decision that Frost did not meet the requirements under Listing 12.06 after October 1997. I would also reverse and remand for further proceedings which would ascertain whether Frost met the requirements under Listing 12.03. I write separately because the correct standard of law to be applied on remand is the standard that was in effect at the time of Frost's original hearing.

---

tenuated by medication or psychosocial support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indi-

cation of continued need for such an arrangement.
20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03 (2002).

**2.** As the issue was not before us, we express no opinion as to whether, on remand, the ALJ must evaluate Frost's disability under the new regulations or the regulations in place at the time of the December 1997 hearing. Under either version, Frost's medical evidence entitles him to consideration of this listing.

## I

In October 1996, Frost filed an application for SSI disability benefits asserting that he had been unable to work since May 1996. This application was denied both initially and upon reconsideration. Frost then requested a hearing before an Administrative Law Judge ("ALJ").

A hearing before an ALJ was held in December 1997. Frost, his sister, and a vocational expert testified at the hearing.[1] In addition, the ALJ examined medical and mental health records from various mental health practitioners who evaluated Frost.

Based on the evidence presented, the ALJ concluded that Frost was disabled from May 1996 to October 1997. The ALJ found that Frost suffered from a compulsive disorder. The ALJ also indicated that Frost probably suffered from paranoid schizophrenia. Because medication had dramatically improved Frost's medical condition after October 1997, the ALJ found that even though some of Frost's symptoms remained, he no longer met the statutory definition of "disabled" under the Social Security regulations. The ALJ then concluded that Frost was ineligible for SSI benefits after October 1997. In making her decision, the ALJ also found that Frost had the ability to perform certain types of work, such as that of a kitchen helper or janitor.

Frost appealed the ALJ's decision to the Appeals Council, which denied his request for review. As a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981. Frost sought judicial review of the final decision. The report and recommendation of Magistrate Judge John L. Weinberg urged affirmance of the Commissioner's final decision. The district court adopted the Magistrate Judge's report and recommendation by an Order and Judgment entered April 2001. Frost petitions for review of the Commissioner's final decision.

## II

Title XVI of the Social Security Act provides SSI disability benefits for persons who are "disabled." 42 U.S.C. §§ 1381–83f. In order to qualify for SSI disability benefits, a claimant must satisfy both the medical and the vocational components to the statutory definition of "disabled." See 42 U.S.C. § 1382c.

To satisfy the medical component, a claimant must prove an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

To satisfy the vocational component, a claimant must prove that his or her impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The SSI regulations apply a sequential five-step evaluation process to determine whether a claimant is statutorily disabled. See 20 C.F.R. § 416.1520.

At step one, the claimant is required to prove that he is not performing substantial gainful employment. See 20 C.F.R. § 404.1520(b). If the claimant fails to meet his burden of proof at step one, the

---

1. A medical expert was also scheduled to testify, but did not testify due to scheduling reasons.

claimant is not statutorily disabled and cannot qualify for SSI disability benefits. If the claimant meets his burden of proof at step one, then the claimant can proceed to step two. *Id.*

At step two, the claimant must prove that he has at least one "severe" impairment. *See* 20 C.F.R. § 404.1520(c). A "severe" impairment is one that limits the claimant's ability to do work. *See* 20 C.F.R. § 416.920(c). Like step one, if the claimant cannot meet his burden of proof, the analysis stops; but if the claimant meets his burden, then the claimant can proceed to the next step. *See* 20 C.F.R. § 404.1520(c).

At step three, the claimant must prove that his impairment meets or equals an impairment on the Listing of Impairments ("Listing") set forth in 20 C.F.R. pt. 404, subpt. P, app. 1. If the ALJ finds that the claimant's impairment meets or equals an impairment on the Listing, then the ALJ can award SSI disability benefits. *See* 20 C.F.R. § 404.1520(d).

If, at step three, the claimant cannot prove that his impairment meets the Listing, then at step four the claimant may alternatively prove that he cannot perform his past relevant work. If the claimant can perform past relevant work, the claimant will not qualify as statutorily disabled. *See* 20 C.F.R. § 404.1250(e).

If the claimant proves he cannot perform his past relevant work, the ALJ will determine the claimant's residual functional capacity. *See* 20 C.F.R. § 404.1250(e). A residual functional capacity is a measure of the physical ability the claimant possesses despite his limitations. *See* 20 C.F.R. § 416.945.

Taking into consideration a claimant's residual functional capacity, the ALJ at step five then considers whether the claimant can do other work. *See* 20 C.F.R. § 404.1250(f). The ALJ considers whether there are a significant number of jobs in the national economy that the claimant can perform. In considering whether there are a significant number of jobs that the claimant can do, the ALJ reviews vocational expert testimony or references the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the ALJ finds that there are a significant number of jobs in the national economy that the claimant can do, the ALJ concludes the claimant is not statutorily disabled and is not entitled to SSI disability benefits; if the ALJ finds that there are not a significant number of jobs in the national economy that the claimant can do, the ALJ concludes the claimant is disabled and entitled to SSI disability benefits. *See* 20 C.F.R. § 404.1250(f).

Frost disputes the ALJ's findings and conclusions at step three and step five only. Frost claims that the ALJ's decision that Frost did not meet the Listings and that Frost could perform other work was not based on substantial evidence and contained legal error.

### III

We review *de novo* the district court's judgment affirming a denial of social security benefits. *Moore v. Commissioner of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002). We may set aside a denial of disability benefits when an ALJ's findings are not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975). To find substantial evidence, "[t]he court must consider both evidence that supports and evidence that

detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *accord Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir.2001). If the evidence can reasonably support either affirming or reversing the Commissioner's decision, we will not substitute our judgment for that of the Commissioner. *Mayes,* 276 F.3d at 459.

We may also set aside a denial of disability benefits when an ALJ's findings of disability are based on legal error. *Tackett,* 180 F.3d at 1097. We review the ALJ's determination of law *de novo,* but we give deference to the ALJ's reasonable construction of applicable statutes. *See Edlund v. Massanari,* 253 F.3d 1152, 1156 (9th Cir.2001). Even though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of disability. *See Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir.1968).

### IV

There was sufficient evidence supporting the ALJ's decision that Frost no longer met the requirements of Listing 12.06 after October 1997. There is also sufficient evidence to conclude that there were a significant number of jobs in the national economy that Frost could perform.

### A

The ALJ found that Frost was disabled from May 1996 to October 1997. Medical improvements directly related to Frost's ability to work occurred after October 1997 so that Frost no longer met the definition of disabled under the Social Security Act. Based on her findings, the ALJ concluded that Frost met the requirements for Listing 12.06 from May 1996 to October 1997, but that he no longer met Listing 12.06 after October 1997. Listing 12.06 covers Anxiety Related Disorders and says:

In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

    a. Motor tension; or

    b. Autonomic hyperactivity; or

    c. Apprehensive expectation; or

    d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B.   Resulting in at least two of the following:

1.   Marked restriction of activities of daily living;  or

2.   Marked difficulties in maintaining social functioning;  or

3.   Marked difficulties in maintaining concentration, persistence, or pace;  or

4.   Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors).

OR

C.   Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. pt. 404, subpt.   P, app. 1, § 12.06 (1997).

Prior to October 1997, Frost met Part A because Frost experienced recurrent and intrusive recollections of a traumatic experience.   Medical records disclosed that Frost had "intense obsessions and compulsions [which] occup[ied] almost all of his waking hours" and that these obsessions centered around Frost's unreasonable worries about Frost's nieces and Frost's suspiciousness of neighbors.

Frost met Part B before October 1997 because Frost had frequent difficulties in concentrating resulting in failure to complete tasks and had repeated episodes of deterioration in work or work-like settings. Frost was diagnosed by a psychiatrist with paranoid-schizophrenia and obsessive-compulsive disorder marked by an impaired ability to relate appropriately to co-workers, supervisors and the general public and an inability to respond appropriately to the pressures and expectations of a normal work setting.

Frost's impairments before October 1997 therefore satisfied the requirements of both Part A and Part B and his condition was within the scope of Listing 12.06. After October 1997, however, Frost failed to meet any of the requirements of Part B.

Frost's symptoms began to improve after October 1997 because of his medication regimen and treatment plan. Frost's doctors reported that Frost's obsessive-compulsive symptoms were improving, the frequency of Frost's hallucinations were decreasing, Frost's personal appearance improved and Frost's conversations became more appropriate and organized.   Frost's sister testified that she observed an improvement in Frost's functioning.

Frost . claims that the ALJ failed to properly consider testimony and evidence indicating that Frost's impairments continued to interfere with Frost's ability to do work.   Frost points to an undated letter from Dr. Price, Frost's treating psychiatrist at the time of Frost's hearing, stating "it would be fair to give [Frost] a chance to succeed in the workplace but I would not be surprised if his condition interfered with his ability to be a fully productive employee."

Frost also observes that more recent medical records from his therapists were submitted to the Appeals Council.   These records state that "it would help [Frost's] self-esteem if he obtained a part-time job[,] however, judging from his history, it is questionable whether he could maintain it."

Finally, Frost argues that his testimony about the side effects of his medication and his sister's testimony about Frost's continued obsessive worries and poor memory, despite his improvement, are further evidence that Frost cannot work.

There is no indication that the ALJ rejected the evidence or testimony presented at Frost's hearing; rather, the ALJ found that the testimony and evidence was consistent with the fact that even though some of Frost's symptoms of impairment remained, there was medical improvement. Because of the medical improvement, the ALJ found that Frost no longer met the requirements of Listing 12.06 in that his difficulties in concentrating had improved and he no longer had repeated episodes of deterioration or decomposition. That the evidence and testimony indicate that Frost might still have some difficulties working is not sufficient to show that Frost still meets the medical requirements required by the Listing.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *See Edlund v. Massanari*, 253 F.3d at 1156. Here, the ALJ determined that the testimony presented was credible in that it was consistent with the medical evidence; that there was no conflict in the medical evidence; and that there were no ambiguities in the evidence and testimony as to the whether Frost's existing impairments still met Listing 12.06. In total, the evidence was sufficient to support the ALJ's finding that Frost no longer met Listing 12.06 and the ALJ's conclusion that Frost was no longer eligible for SSI disability benefits.

**B**

The SSI regulations require that when a claimant experiences medical improvement so that the claimant no longer meets the Listing, the ALJ must determine the claimant's residual functional capacity based on the claimant's medical improvement and whether the claimant can now do work. *See* 20 C.F.R. § 404.1593(f).

In evaluating Frost's residual functional capacity, the ALJ considered Frost's age, education and vocational background in accordance with the regulations of the Medical–Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The ALJ then considered the medical records and testimony which indicated that while Frost had some difficulties with concentration and interacting with the general public, his condition had improved to the point where he could understand, recall and follow simple instructions, and he could perform simple, repetitive tasks.

Based upon this residual functional capacity, the vocational expert testified that Frost could find work as a kitchen helper (which entailed medium, unskilled work) or as a commercial janitor (which entailed medium to heavy unskilled work). The vocational expert also testified that there are, respectively, 50,000 and 1,000,000 such jobs in the national economy.

This evidence is sufficient to support the ALJ's conclusion that, given that Frost no longer met Listing 12.06, Frost was not disabled because he could perform work in the national economy.

**V**

**A**

Even though there was sufficient evidence supporting the ALJ's determination that Frost was no longer disabled under Listing 12.06 after October 1997, the ALJ failed to adequately evaluate whether Frost's impairments might meet the requirements of Listing 12.03 after October 1997. This case should be remanded so that Listing 12.03 can be considered.

Listing 12.03 covers Schizophrenic, Paranoid and Other Psychotic Disorders and, at the time of Frost's hearing, provided:

 [These disorders are] [c]haracterized by the onset of psychotic features with de-

terioration from a previous level of functioning.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one or more of the following:

1. Delusions or hallucinations; or

2. Catatonic or other grossly disorganized behavior; or

3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

    a. Blunt affect; or

    b. Flat affect; or

    c. Inappropriate affect;

Or

4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or worklike settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors);

OR

C. Medically documented history of one or more episodes of acute symptoms, signs and functional limitations which at the time met the requirements in A and B of this listing, although these symptoms or signs are currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of deterioration or decompensation in situations which cause the individual to withdraw from that situation or to experience exacerbation of signs or symptoms (which may include deterioration of adaptive behaviors); or

2. Documented current history of two or more years of inability to function outside of a highly supportive living situation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03 (1997).

The ALJ did not evaluate Frost under Listing 12.03, which covers Paranoid and Schizophrenic Disorders, even though the ALJ found that Frost probably had paranoid-schizophrenia. Section 12.03(C) specifically addresses medical improvement and should have been analyzed to determine whether Frost would have met the requirements of Listing 12.03 and therefore maintained his status as disabled and maintained his eligibility for SSI disability benefits.

The appellee argues that Frost should not be able to raise the issue of Listing 12.03 on appeal because it was not raised before the district court. While it is well-settled that a claimant generally cannot assert for the first time on appeal matters not raised at the district court level, *see In re Professional Inv. Properties of America*, 955 F.2d 623, 625 (9th Cir.1992), that rule is not a bar in this appeal because the matter was raised in both the district court proceedings.

## B

Listing 12.03 was revised in 2000. *See* 65 Fed.Reg. 50,779–80 (August 21, 2000). The final rule revising Listing 12.03 specifically provides that the revisions to the Listing are effective September 20, 2000. *See* 65 F.R. 50,746. The ALJ issued the decision in Frost's case well before that day, in May 1998. Application of the revised standard to Frost's case would be impermissibly retroactive.

"Regulations cannot be applied retroactively unless Congress has so authorized the administrative agency and the language of the regulations requires this result." *Scamihorn v. Gen. Truck Drivers,* 282 F.3d 1078, 1083 (9th Cir.2002) (citing *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).

Because the Social Security Act's grant of authority to the Secretary of Health and Human Services to promulgate regulations, 42 U.S.C. § 1383b, "does not affirmatively grant [the Secretary] authority to make those regulations retroactive, and because the final regulations themselves do not provide any indication that they are to be applied retroactively, they do not govern this case." [2] *Id.* (internal citations omitted). *See also National Min. Ass'n v. Dept. of Labor,* 292 F.3d 849, 860 (D.C.Cir. 2002) (holding that a rule is impermissibly retroactive if "applied to claims that were pending on the regulations' effective date").

Because application of the revised Listing requirements would be impermissibly

retroactive, the correct legal standard on remand is the one in effect at the time of Frost's original hearing.

---

**2.** This is unlike cases in which a change is made to the law and provisions amending the law specifically indicate that the changes apply to pending cases. For example, in *Dean v. Gardner,* the court held that amendments to the Social Security Act were applicable to all cases that were still pending as of the adoption date of the amendments. 393 F.2d 327, 329 (9th Cir.1968). The court based its decision on the fact that the amending act explicitly instructed that the changes would apply to all cases that were not final as of the adoption date, including cases on appeal to the federal circuit courts. *Id.; see also Whitt v. Gardner,* 389 F.2d 906 (6th Cir.1968); *Flake v. Gardner,* 399 F.2d 532 (9th Cir.1968).